Filed 3/26/13  P. v. Lozano CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ANTONIO JESUS LOZANO,<br><br>        Defendant and Appellant. | D059304<br><br><br>(Super. Ct. No. SCS216495) |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed as modified.

Antonio Lozano was convicted by jury of five felonies arising out of shooting and kidnapping incidents involving his ex-girlfriend and her visits to her mother's home.  The shooting incident on January 1, 2008 resulted in a guilty verdict of assault with a semi-automatic firearm (Pen. Code,[1] § 245, subd. (b)), and jury findings that he personally

---

[1]    All undesignated statutory references shall be to the Penal Code.

used an assault weapon within the meaning of section 12022.5, subdivision (a), and he personally inflicted great bodily injury (on the mother, Fidelia Garcia) within the meaning of section 12022.7, subdivision (a). Lozano was also convicted of shooting into an inhabited structure (§ 246), with findings that he caused great bodily injury (§ 12022.7, subd. (a)); he intentionally and personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)); and he possessed an assault weapon (§ 12280, subd. (b)).

Regarding an incident a few weeks earlier involving his ex-girlfriend, Christina Garcia, Lozano was convicted of kidnapping and false imprisonment. (§ 207, subd. (a); §§ 236, 237, subd. (a).)[2] The jury could not reach a verdict on the charge of attempted murder of Fidelia, and a mistrial on that count was declared. (§§ 664, 187.) He was acquitted of making a criminal threat against Christina. (§ 422.) After separate trial proceedings, his defense of insanity was rejected by the jury.

Lozano was sentenced to an indeterminate term of 25 years to life for the finding of personal and intentional discharge of a firearm resulting in great bodily injury, as well as a determinate term of six years eight months (five years for shooting into an inhabited structure, and one year eight months for kidnapping; § 246, 236, 237, subd. (a) and related enhancements) and fines.

---

[2]    Because several individuals involved in this record are named Garcia, we will utilize their first names or titles to identify them.

Lozano appeals, contending the proceedings violated his rights to effective assistance of counsel, and he was denied confrontation rights (U.S. Const., 6th Amend. & Cal. Const., art. I, § 15), when the trial court ruled that evidence would be admitted from a reported November 2009 conditional examination of a material witness against Lozano, his friend Hector Verduzco, who was present at the time of the January 2008 shooting, but who had become unavailable by the time of trial (the conditional exam). (Evid. Code, § 402.) Lozano challenged the admission of this evidence on the grounds that his previously appointed attorney, Gaylord Stewart of the Alternate Public Defender's office (APD), who appeared for him at the conditional exam of the witness Verduzco, was the same attorney who had earlier assisted Verduzco as appointed counsel in June 2009, at the time Verduzco pleaded guilty to an unrelated theft offense and was granted probation. A few months later, at the conditional exam, Verduzco had his own appointed attorney from another agency. A few more months after the conditional exam, Attorney Stewart declared a conflict in this respect and was replaced by different trial counsel for Lozano, Attorney Ricardo Garcia of the Multiple Conflicts Office.

Lozano contends that his constitutional rights to the assistance of counsel at trial were violated as of the time of the conditional exam, when Attorney Stewart was laboring under a conflict of interest that arguably undermined his duty of loyalty to Lozano. (*People v. Doolin* (2009) 45 Cal.4th 390, 417 (*Doolin*).) Lozano also contends that his witness confrontation rights were violated, because this conflict of interest indicated that Stewart could not have effectively cross-examined his previous client Verduzco during

3

the conditional exam.  On either ground, Lozano claims the admission of that evidence irretrievably tainted these convictions.  (*Crawford v. Washington* (2004) 541 U.S. 36.)

"[C]laims of Sixth Amendment violation based on conflicts of interest are a category of ineffective assistance of counsel claims that, under *Strickland* [*v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*)] generally require a defendant to show (1) counsel's deficient performance, and (2) a reasonable probability that, absent counsel's deficiencies, the result of the proceeding would have been different."  (*Doolin*, *supra*, 45 Cal.4th at p. 417, citing *Mickens v. Taylor* (2002) 535 U.S. 162, 166 (*Mickens*); *People v. Rundle* (2008) 43 Cal.4th 76, 169 (*Rundle*).)  A reviewing court may assess such conflict of interest claims by evaluating the relevant evidence independently and drawing legal conclusions based on the record.  (See *In re Darr* (1983) 143 Cal.App.3d 500, 509.)

Applying the relevant standards, we conclude the court did not err as a matter of law or abuse its discretion in denying Lozano's motion to exclude this evidence.  The record supports the trial court's conclusions that although there was a potential conflict of interest at the time of the conditional exam, there was no prejudice to Lozano and the evidence was properly admitted.  The convictions are well supported by the record.  However, we accept Lozano's argument, and the Attorney General's concession, that the trial court erred in assessing a $200 "Court Facilities Funding" fee, based on the five felony convictions.  At a rate of $30 per conviction, only $150 is supported by the record.  (Gov. Code, § 70373 [authorizing a fee of $30 for conviction of "each misdemeanor or

4

felony"].) We affirm, and order the abstract of judgment to be corrected and a new abstract of judgment issued to show this fee of $150.

I

*INTRODUCTION*

In considering the issues presented about any potential prejudice from Attorney Stewart's successive representation, we first take note that Lozano's appeal does not specifically challenge the sufficiency of the evidence regarding his convictions of kidnapping and false imprisonment of Christina. (§§ 207, subd. (a); 236, 237, subd. (a).) Verduzco was not present as a witness during the commission of those offenses. Also, Lozano's arguments do not directly attack the evidence or convictions from the shooting incident, when Verduzco was present as a witness, except by claiming a right to reversal because of the potential effect that Verduzco's evidence had upon the validity of Lozano's legal representation that led to that set of convictions, in light of Verduzco's previous dealings with the same attorney, Stewart.

Verduzco's testimony pertaining to the charges arising out of the shooting incident included demeanor evidence about Lozano's mental state at the time, his apparent intent, and his ultimately unsuccessful insanity defense. Ultimately, a mistrial was declared on the attempted murder charge, and Lozano was acquitted of the criminal threat charge regarding Christina. Thus, as part of the prejudice inquiry about the admission of this conditional examination testimony, over unsuccessful objections by Lozano raising the conflict of counsel, we necessarily consider the extent to which Verduzco's evidence had

5

potentially probative effect, and on which charges. We next describe the facts of the offenses and set out the time frame of Attorney Stewart's professional representation of these two clients. We then discuss and apply the authorities in this area.

## A. Kidnapping Facts

Lozano and Christina were involved and lived together for eight or nine years, and had two children together. In August 2007, Christina moved out, but Lozano, who has severe anxiety and personality disorders, remained dependent on her. He took a lot of anti-anxiety and anti-depression medications and frequently sought medical care, with her assistance.

In December 2007, Lozano came to Christina's mother's house and forcibly abducted Christina. They picked up the children and Lozano forced them all to stay with him elsewhere for about two weeks, using handcuffs, a knife, and fists on Christina a few times. By Christmas time, Christina persuaded him to take them to her mother's house, and they did not return to him. According to Christina's sister Miriam, Lozano told Christina he would kill her if she did not go back to him, so she was hiding from him.

## B. Shooting Incident

On January 1, 2008, Lozano's 23rd birthday, he went over to see his friend Verduzco and told him he wanted to see Christina. Lozano had his M-11 semiautomatic pistol with him, and at his request, Verduzco called Christina and then drove the two men to Christina's mother's house in Lozano's car. When Verduzco knocked on the door, Christina answered it, then saw that Lozano was also present on the stairs. Since he

6

looked angry and was heading up the stairs, hiding something in his jacket, she tried to lock the doors but could only lock the inner one.

As Lozano and Christina yelled at each other in Spanish, she, her mother and sister were inside the house and heard him yell different things. Christina heard him say "Voy a tirar la puerta" (I will knock down the door or shoot at it). Her sister heard him say he would knock down the door. Christina's mother heard, "Te voy a disparar" (I'm going to shoot, or shoot you). Lozano shot out the doorknob, the bullet hitting Christina's mother in the knee.

Verduzco saw Lozano bend down, seeming to hide the gun under the house in an open space, and then they ran away. They drove to a nearby hotel in San Ysidro, and Verduzco took a cab home.

Christina's mother went to the hospital and Christina went to a friend's house. Lozano soon got in touch with Christina and they stayed together in a hotel for two days. Lozano said he did not know what he was doing that night, and made her stay with him.

After a few days, Christina and Lozano went together to a child protective services office building. She was seeking to recover the children, who had been taken into protective custody. Christina told the social worker Lozano was in the area and he was arrested. He had with him cash, a folding knife, and false identification cards.

Lozano gave a statement to police that was later admitted at trial. He told the interviewing officer that he had been trying to open the door with the gun, but it did not open. He said he did not remember shooting the gun, but he did not want to have·it with

7

him, so he and Hector hid it under the house and ran away. After being charged, Lozano entered a plea of not guilty and reserved the right to enter a plea of not guilty by reason of insanity, and he did so later.

## C. November 2009 Conditional Exam Proceedings

Attorney Stewart of the APD was assigned to represent Lozano around February 2009, and first appeared in court on his behalf on April 2, 2009. Stewart did not discuss with his supervisors whether he should withdraw as Lozano's counsel until May 2010. In the meantime, he read the discovery in Lozano's case intensively in June 2009, and Lozano's preliminary exam took place on July 8, 2009.

According to (later) testimony by Attorney Stewart during Lozano's trial in November 2010, he had spent six to eight hours from April through June 2009 representing Verduzco on a burglary charge. He had a heavy caseload the day that Verduzco entered a plea, and Verduzco's was "a briefly handled case." Verduzco pled guilty and was granted probation. Stewart turned his attention to other matters, apparently including Lozano's case. The prosecutor wanted to ensure that Verduzco would be available as a witness at Lozano's trial, and Verduzco was granted immunity from prosecution in connection with the shooting incident. The prosecutor requested that the court conduct a conditional examination of Verduzco, and appoint new counsel for him. This request was granted November 4, 2009. Attorney Grove of the Office of Assigned Counsel (OAC) appeared for Verduzco at the conditional exam November 16, 2009, while Stewart appeared for Lozano.

8

Basically, Verduzco testified about his participation in bringing Lozano to Christina's mother's house, seeing the shooting, hiding the gun, and running away with him. He said Lozano was taking pills and acting weird when he came over, and he had a creepy look on his face and was waving the gun around while they were going over to Christina's house. Lozano said Christina was going to be his and nobody else's.

According to testimony by Attorney Stewart, he had read Lozano's discovery materials in June 2009 and decided on his strategy for cross-examining Verduzco. In November 2009, when Lozano's trial was continued for investigation of a plea of not guilty by reason of insanity or other negotiations, the conditional exam of Verduzco was scheduled for November 16, 2009. It was not until November 2009, either before or after the conditional exam, that Stewart said he realized he had previously represented Verduzco, in Verduzco's own case. However, Stewart thought that his knowledge about Verduzco could help Lozano's case, so there should be no actual conflict of interest or harm to Lozano if he proceeded with that legal representation.

After the conditional exam, both witness Verduzco and a District Attorney's office investigator recognized Attorney Stewart as having previously worked on Verduzco's defense. The prosecutor brought that information to Stewart's attention and provided him with documents from Verduzco's case. The prosecutor consulted her supervisors about the problem with Stewart's office's prior representation of witness Verduzco, but was told it would not be appropriate to inform the court that was supervising the conditional examination. Stewart formally withdrew as Lozano's counsel in June 2010.

The prosecutor continued throughout the summer of 2010 to attempt to produce Verduzco, then on probation, as a witness to appear at Lozano's trial. The prosecutor set up a second conditional exam date in July 2010, to allow Lozano's new appointed counsel to participate, but the notice given was inadequate and it was taken off calendar, the minutes stating that Verduzco was no longer needed as a witness. It was determined that he was in federal custody, but he could not be located as of November 18, 2010. As of November 29, 2010, the trial court was notified that Verduzco had been deported and would not be available to testify.[3]

In November 2010, Lozano's trial attorney, Garcia, sought a hearing under Evidence Code section 402 to have the conditional exam evidence from Verduzco excluded on the grounds that Lozano's then-attorney, Stewart, had an actual conflict of interest, due to his previous representation of Verduzco on the other matter, from April through June 2009. Lozano thus claimed he was effectively without counsel at the conditional exam, his rights of confrontation of witnesses were unprotected, and he was absolutely entitled to exclusion of that evidence.

The prosecutor opposed the motion, arguing that Stewart's performance for Lozano had been adequate and there had been no prejudicial conflict of interest.

At the hearing, the court directly examined Attorney Stewart, and allowed cross-examination by both the prosecutor and defense counsel. As will be explained in more

---

[3]    On appeal, Lozano makes no argument that the prosecution was not diligent in attempting to produce Verduzco as a witness.

10

detail in the discussion portion of this opinion, Stewart was asked whether he did anything differently at the conditional exam than he might have done, if his office had not previously represented Verduzco. Stewart responded that he did not, because he knew "that I could effectively represent Lozano [in] Verduzco's examination without creating an actual conflict without doing anything different. [¶] Specifically I knew I did not have to go into Verduzco's background because the salient points I wanted from Verduzco were actually effective to my defense of Mr. Lozano. . . . I cross-examined Verduzco [and] got beneficial points for Lozano's defense and to this day, as I sit here, I do not believe that any actual conflict exists or existed."

In argument on the motion, the trial court and counsel discussed whether there were issues about inadequate training at the office of defense counsel, and whether Attorney Stewart had failed to follow ethical guidelines (Cal. Rules of Professional Conduct; all further rule references are to the Cal. Rules of Professional Conduct unless otherwise noted) to advise Lozano earlier about the potential conflict, and whether the prosecutor or defense counsel should have so advised the judges that were supervising the conditional exam. Based on defense objections, the trial court did not allow Stewart to discuss his tactics at the conditional exam. Ultimately, the court ruled that the fact of Attorney Stewart's previous representation of witness Verduzco amounted to an unethical and "per se" conflict of interest, but this had caused no actual prejudice during the cross-examination, and the evidence was ruled to be admissible at trial.

11

D. Witnesses at Trial

Christina, her mother and sister, and numerous other witnesses testified at trial. Christina had changed her story a few times, explaining she was angry and had lied to police sometimes. Christina's mother was off work for two months due to her shooting injury, and she still lacked feeling in her injured knee as of trial time. A transcript of Verduzco's conditional exam was provided to the jury, and portions read and reread, on request, to it.

In his defense, Lozano testified about his mental illness and medication, his lack of memory of the events, and his lack of intent to shoot either Christina or her mother. The jury listened to a recording of his interview with the police investigator and received the transcript.

Following instruction and deliberations, the jury returned guilty verdicts on the offenses as outlined above, but acquitted Lozano on the criminal threat charge, and a mistrial was declared on attempted murder. Separate proceedings were conducted on Lozano's sanity at the time of the offenses, and the jury found he was sane. The court imposed an indeterminate sentence of 25 years to life, and determinate terms of six years and eight months, along with fines and other assessments, including the challenged $200 court facilities funding fee. (Gov. Code, § 70373.) Lozano appeals.

II

*STANDARDS FOR EVALUATING CONSTITUTIONAL CONFLICT OF INTEREST*

"It has long been held that under both Constitutions, a defendant is deprived of his or her constitutional right to the assistance of counsel in certain circumstances when, despite the physical presence of a defense attorney at trial, that attorney labored under a conflict of interest that compromised his or her loyalty to the defendant." (*Rundle*, *supra*, 43 Cal.4th 76, 168.)

A disqualifying conflict of interest may arise "in situations in which an attorney represents a defendant in a criminal matter and currently has or formerly had an attorney-client relationship with a person who is a witness in that matter. [Citations.] [¶] Such a conflict springs from the attorney's duty to provide effective assistance to the defendant facing trial and his fiduciary obligations to the witness with whom he has or had a professional relationship." (*People v. Bonin* (1989) 47 Cal.3d 808, 835.)

To inquire into the effect of an alleged constitutional level conflict of interest, the court considers whether the defendant has shown both deficient performance by counsel, "and (2) a reasonable probability that, absent counsel's deficiencies, the result of the proceeding would have been different." (*Doolin*, *supra*, 45 Cal.4th at p. 417; *Mickens, supra,* 535 U.S. 162, 166, 172-176; *Strickland, supra,* 466 U.S. 668, 694.)

In *Doolin*, the Supreme Court outlined the appropriate inquiries in this context:

> "[A] determination of whether counsel's performance was 'adversely affected' under the federal standard 'requires an inquiry into whether counsel "pulled his punches," i.e., whether counsel failed to represent defendant as vigorously as he might have, had there been

13

no conflict.  [Citation.]  In undertaking such an inquiry, we are . . . bound by the record.  But where a conflict of interest causes an attorney not to do something, the record may not reflect such an omission.  We must therefore examine the record to determine (i) whether arguments or actions omitted would likely have been made by counsel who did not have a conflict of interest, and (ii) whether there may have been a tactical reason (other than the asserted conflict of interest) that might have caused any such omission.' " (*Doolin, supra*, 45 Cal.4th at p. 418.)

In *Mickens, supra,* 535 U.S. 162, 176, the U.S. Supreme Court clarified these distinctions:  " 'Breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel.' "  The variously imposed ethical duties of an attorney are equally important, but when a defendant seeks the application of an exclusionary rule for protecting a Sixth Amendment right to counsel, the defendant must show not just an ethical violation, but also that counsel was actively representing conflicting interests, and this prejudiced the defendant.  (*Ibid.;* see *Doolin, supra,* 45 Cal.4th at p. 418.)[4]

Both at trial and in Lozano's opening brief on appeal, he argued for dismissal or per se reversal of his convictions, on the grounds that both federal and state standards

---

[4]    Under rule 3-310(B)(1), an attorney may not accept or continue representation of a client without disclosure where "(1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter."  Under rule 3-310(E), an attorney shall not, without informed written consent of the client or former client, "accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."  Under rule 3-700(B)(2), an attorney who represents a client in one matter shall withdraw from that employment, if the attorney "knows or should know that continued employment will result in violation of these rules."

14

justified a finding that he was absolutely deprived of any effective assistance of ethical counsel, through the conflict situation that had developed regarding Verduzco.

In his reply brief, Lozano acknowledges that a prejudice analysis is also required, but claims that the admission of the testimony from the conditional exam was still harmful error, as shown by Attorney Stewart's admissions that he knew about a potential conflict of interest while he was cross-examining Verduzco, even if it is assumed that Stewart did not subjectively believe it to be an actual conflict at that time. On both appellate theories, deprivation of counsel and the right of confrontation, Lozano argues for application of the standard for a deprivation of federal constitutional rights. (*Chapman v. California* (1967) 386 U.S. 18, 24.)[5]

The Attorney General responds that the record does not support a conclusion of any "complete" denial of assistance of counsel, nor a denial of any such assistance at a "critical stage of the proceedings," so that a harmless error standard properly applies. (*Mickens, supra,* 535 U.S. 162, 166; *People v. Watson* (1956) 46 Cal.2d 818, 836 [whether it is reasonably probable that the defendant would have obtained a more favorable result, absent the error].) Thus, the Attorney General claims that the conditional exam evidence mainly pertained to charges on which the jury did not convict

---

5    Where use of former testimony violates a defendant's right to confrontation, the test for error is whether the error was harmless beyond a reasonable doubt. (*Chapman v. California*, *supra*, 386 U.S. 18, 24; *Lilly v. Virginia* (1999) 527 U.S. 116, 139-140.) The " ' "indicia of reliability" prong of the confrontation clause analysis is satisfied if there was an adequate opportunity for the defendant to cross-examine the witness and counsel took advantage of that opportunity." ' " (*People v. Sandoval* (2001) 87 Cal.App.4th 1425, 1434-1435, 1444.)

15

(attempted murder or criminal threat toward Christina), and therefore, no undue interference with Lozano's assistance of counsel can be shown, or any prejudice.

In light of the required prejudice determination and the nature of the arguments about what Attorney Stewart did or did not do, we apply a harmless error standard and examine the record to determine " '(i) whether arguments or actions omitted would likely have been made by counsel who did not have a conflict of interest, and (ii) whether there may have been a tactical reason (other than the asserted conflict of interest) that might have caused any such omission.' " (*Doolin, supra*, 45 Cal.4th at p. 418.)  We need not accept the subjective representations of Stewart about whether there was an actual conflict of interest.  Nor do we find useful the trial court's terminology that Stewart's previous representation of witness Verduzco created a "per se" conflict of interest.  Any conflict of interest on the part of a defendant's attorney must further be examined for its effect upon the validity of the proceedings that were conducted, in terms of prejudice to the complaining party.  We consider when the conflict issues arose, and their impact on the convictions that were ultimately obtained.  This requires resolution of questions of law on review of the record, on whether there was prejudice from the actions taken or not taken.  (See *In re Darr*, *supra*, 143 Cal.App.3d 500, 509.)

16

III

*APPLICATION OF STANDARDS*

A.  Contentions and Threshold Issue of Waiver

Lozano relies on *U.S. ex rel. Williamson v. LaVallee* (D.C.N.Y. 1968) 282 F.Supp. 968, 971-972 (*LaVallee*) as an example of "the potential dangers that faced the [defendant] by being defended by an attorney who was also representing an important prosecution witness." (*Id.* at p. 971.)  In that case, the witness cooperated with the prosecution to receive favorable treatment, and still had a separate felony charge pending against him, when being questioned by defense counsel (his own counsel as well).  That attorney had an evident conflict of interest that created severe doubt that he could have vigorously cross-examined his other client, while acting in the supposed defense of the defendant.  (*Ibid.*)  Also, "[a] second danger in being represented by an attorney who is also representing a prosecution witness is that the scope of examination of the witness by the attorney might be restricted by the fact that the attorney has learned confidential information about his client-witness which cannot be revealed." (*Ibid*.)  The subject convictions were set aside for ineffective representation.

In *In re Darr, supra*, 143 Cal.App.3d 500, 510-511, the record showed that the same trial attorney had simultaneously represented clients whose interests were adverse. The habeas petitioner, one of the clients, was granted relief from conviction due to this irreconcilable conflict of interest.  His trial attorney had previously assisted the witness against him in reaching a plea bargain, and the witness still had probation revocation

17

proceedings pending, when being required to testify against the habeas petitioner. Since the same trial attorney still represented both clients as of the time of trial of the habeas petitioner, his cross-examination of the witness on behalf of the petitioner was found to be impaired. The record showed that the trial attorney was under such continuing professional obligations to one client, as to preclude him from being able to effectively and legitimately represent the adverse interests of the petitioner at his own trial. The conflict issue was identified as causing "unexplained omissions" to exist in the petitioner's attorney's cross-examination of his other client, the witness, on the question of bias. (*Id.* at pp. 512-514.) Accordingly, the petitioner's conviction was set aside.

Relying on such authorities, Lozano argues a similarly grave conflict of interest is demonstrated on this record, with similar prejudicial effect. We next discuss Lozano's claims on the merits, and without any reliance on the theories of waiver or forfeiture that are raised by the Attorney General. Those theories arise from the prosecutor's attempts to make Verduzco available to testify at a second conditional examination during the summer of 2010, although inadequate notice was given, counsel for the defense objected, the effort was abandoned, and Verduzco became unavailable. We think Lozano's attorney had no obligation to accept the inadequate notice given in order to allow the prosecutor to make a better record of the conditional exam, to have a "do over" without Attorney Stewart's participation. We take the record about the admission of the evidence from the November 2009 conditional exam as we find it, without applying such waiver principles.

B.  Record:  Nature of Actual or Potential Conflict

In the course of making its ruling on the challenge to the admission of the evidence, the trial court read the transcript of the conditional exam to evaluate the degree to which Lozano's interests were potentially affected.  The court found there had been no showing that either party had used the conflict of interest problem to strategic advantage, such as setting up a barrier so that the conditional exam evidence could not be used.  Rather, the court's analysis properly gave priority to protecting the defendant's right to effective assistance of counsel.  This focused on whether Attorney Stewart was able to provide an adequate opportunity for Lozano to cross-examine Verduzco, under the confrontation clause.  (*People v. Sandoval*, *supra*, 87 Cal.App.4th 1425, 1434-1435, 1444.)

As we will show, the court was correct in ruling that a potential conflict existed.  Our task is to identify the nature and extent of that conflict, as well as its potential prejudice.  First, the record about the actions of Attorney Stewart does not demonstrate this was a case of simultaneous representation.  Stewart considered that Verduzco's case was "closed" when probation was granted to him in June 2009, and Stewart acted on behalf of Lozano at the conditional exam later, in November 2009.  In preparation for the conditional exam, the court appointed conflict counsel for Verduzco in November 2009.  Stewart did not participate in the immunity discussions for Verduzco.

However, Lozano's defense counsel argued to the trial court that the policy of Stewart's office, the APD, was to remain as appointed counsel for clients during the

19

probationary period. The prosecutor responded that she did not realize until November 2009 that Verduzco had been represented by the same individual, Stewart, and she previously knew only that he had been represented by the APD office staff. To the extent Lozano is arguing there was simultaneous representation, this is a new argument on appeal that is not supported by the record. Lozano admits that the matter was not brought out at the conditional examination, nor during Stewart's testimony at this trial.

In any case, the record is unclear about the scope of the APD representation of Verduzco, except to show that Attorney Stewart individually did not remember him during much of the relevant time period. Nor was Verduzco's theft offense in any way related to the current charges. Unlike the cases of *In re Darr, supra*, 143 Cal.App.3d 500, 512-514 or *LaVallee, supra*, 282 F.Supp. 968, 971-972, this was not simultaneous representation, but rather successive in nature and not on closely related charges and proceedings, and must be evaluated as such.

The record is similarly not dispositive on the issue of whether the respective attorneys followed their own office policies for declaring a conflict of interest, or notifying the court thereof. Attorney Stewart's office policy was that in case of a potential conflict, a supervisor should be consulted on whether to declare a conflict to the court. There was a change of personnel of APD supervisors around that time, and Stewart did not declare a conflict until May 2010, and was not relieved as counsel until June 2010. Attorney Garcia of the MCO was appointed in his place. Although the prosecutor had asked her superiors what to do, she was told not to notify the court in

connection with the conditional exam proceedings. Certainly, this sequence of events is most regrettable. Both Stewart and the prosecutor should have informed the court of the potential conflict at a much earlier stage of the proceedings. We find it difficult to understand how the parties could have failed to inform the court of this potential conflict.

Whatever series of unfortunate events took place in the respective agencies does not clearly establish whether the instant example of conflict was actual or potential. The rules of professional conduct are what they are, and they override such ad hoc office policies on the governing ethical standards for conflicts of interest. (Rules 3-310(B)(1), (E); 3-700(B)(2); *People v. Bonin, supra,* 47 Cal.3d at p. 835.)

Although Attorney Stewart gave conflicting testimony about when he became aware of the potential conflict of interest, the existence of a conflict was obvious to all by the time that separate counsel for Verduzco was appointed on November 4, 2009. However, having such an apparent ethical problem does not necessarily amount to a disqualifying constitutional conflict. (*Mickens, supra*, 535 U.S. at p. 176.) The issue remains about whether Stewart's knowledge about the background of this witness affected the type or intensity of the cross-examination that he conducted. We take it as given that Stewart had potentially conflicting interests and an ethical problem, and we next turn to whether those conflicts were of constitutional dimension, and whether Lozano was evidently prejudiced from the attorney's performance on his behalf.

21

### C. Prejudice; Imposition of Fees

Several factors in the record persuade us there was no constitutional level conflict of interest here. Attorney Stewart's beliefs that he had no actual conflict, even if a potential one, can be compared to ignorance of the law. "Defense counsel must be reasonably familiar with significant recent decisions." (5 Witkin, Cal. Criminal Law (4th ed. 2012) Criminal Trial, § 246, p. 412.) By the same token, trial counsel provides adequate representation when showing a correct understanding of ethical restrictions on successive representation. Even if his beliefs "presently can be characterized as mistaken, such an error, in itself, would not necessarily demonstrate that counsel's performance was constitutionally deficient." (*In re Jackson* (1992) 3 Cal.4th 578, 614.)

In *Jackson, supra*, 3 Cal.4th 578, 616, the problem was that defense counsel had failed to investigate the availability of certain mitigating evidence, based on his misunderstanding of still-developing case law. The court found no reversible error, concluding, "the confusion of defendant's trial counsel on this legal question at the time of defendant's trial was not so unreasonable as to demonstrate that a tactical decision not to offer this evidence (or to request a hearing under Evid. Code, § 402), based on such a mistake, would have fallen below the level of constitutionally adequate representation." (*Jackson, supra*, at p. 614.) The court's analysis "eliminate[d], as we must, the potentially distorting effects of hindsight (see *Strickland v. Washington, supra,* 466 U.S. 668, 689)," and thus counsel's failure to investigate was deemed not to be prejudicial, in light of potential tactical reasons to avoid introducing any such evidence. (*Jackson,*

22

*supra*, at p. 614.)  "[T] here is no reasonable probability that the judgment . . . was affected by counsel's failure to conduct such an investigation."  (*Id*. at p. 616.)  "Although another attorney reasonably might have made a different tactical decision, we cannot say that defense counsel's tactics rendered his representation constitutionally deficient."  (*Ibid*.)

Lozano contends Attorney Stewart structured his cross-examination not to impeach Verduzco's credibility or to contest his version of the facts, in order to avoid increasing the conflict from a potential one to an actual one.  He suggests Stewart did not question Verduzco about his immunity agreement or his prior convictions, possibly due to Stewart's ongoing duty of loyalty to his prior client.  However, the prosecutor brought out information about Verduzco's prior convictions, and instructions were given to the jury about how to evaluate his testimony, including the effect of the grant of immunity. Those circumstances greatly lessen the impact of these arguments.

Attorney Stewart suggested during his testimony that there were tactical reasons for conducting the cross-examination of Verduzco in the way he did.  Counsel for Lozano then objected to any efforts by Stewart to identify such tactical considerations, and the trial court agreed, but also acknowledged that Stewart appeared to be testifying he had used his knowledge about Verduzco to decide what areas to go into on cross-examination.   This leaves us in a position of assuming that he may have had tactical reasons for doing what he did.  And by admitting the evidence of the conditional exam,

the trial court made implied findings that there was no prejudice from the manner in which it was conducted.

In assessing any undue prejudice, we look to the nature of the convictions that were reached, with relation to the specific evidence being complained of as harmful. Lozano's shooting incident resulted in guilty verdicts on the assault count, shooting into an inhabited dwelling, possessing an assault weapon, and the associated findings of great bodily injury and personal intentional discharge of a firearm. Even without the testimony of Verduzco about his observations at the scene, there was testimony from Christina, from her mother, her sister, the investigating police officer, and the firearms experts that it was Lozano who charged up the stairs and shot the automatic pistol into the door knob area, and the bullet that hit Fidelia from his gun had wood and paint on it. Those convictions did not depend at all upon Verduzco as a witness.

The more controversial conditional exam testimony from Verduzco is that about his observations of Lozano's mental state, before and after they arrived at Christina's mother's house. He testified about Lozano's evident agitation, gun use, and comments about how if he could not have Christina, nobody could. It is not persuasive to us that the jury requested a readback of all of Verduzco's testimony, among other requests. His information was still mainly probative about the attempted murder count, upon which a mistrial was declared, or the threat count, of which he was acquitted, or the sanity finding, which he does not dispute. The information had nothing to do with the kidnapping incident that took place a few weeks earlier. Although it was somewhat

24

supportive of the convictions of shooting into an inhabited dwelling and assault, it was not essential evidence for the jury to be able to render verdicts convicting him of the shooting incident counts. The admission of the conditional exam evidence did not prejudice him in any material way with regard to the critical shooting incident convictions. (See *Doolin*, *supra*, 45 Cal.4th at p. 417.) Stewart's previous representation of Verduzco, before he was questioning Verduzco at the conditional exam, did not create any apparent defects in his approach that disadvantaged Lozano, and on this record, we cannot take any guidance from any tactical considerations he may have had.

Overall, with respect to how the cross-examination was conducted, "we cannot say that defense counsel's tactics rendered his representation constitutionally deficient." (*Jackson, supra*, 3 Cal.4th 578, 615.) Nor have his other acts or omissions been shown to have changed Lozano's position at trial in any material way. Under either standard of error, the more stringent *Chapman* standard of harmless beyond a reasonable doubt, or the less stringent *Watson* standard, Lozano's claim of prejudice is unsupported by the record. The level of conflict of interest that was demonstrated did not undermine the validity of the trial proceedings or the support for his convictions.

We agree, however, that the trial court erred in imposing a $200 court facilities fee, when only $150 for the five felony convictions was appropriate. The judgment will be affirmed as modified and the trial court will be directed to prepare a new abstract of judgment accordingly.

DISPOSITION

We remand for the trial court to modify the sentencing order and amend the abstract of judgment to reflect that the correct fine under Government Code section 70373 is $150; the court is directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.

26